MARSHALL (DAVIS v.). See Case No. 3,-641.

---

## Case No. 9,127.

### MARSHALL v. DELAWARE INS. CO.

[2 Wash. C. C. 54.] [1]

Circuit Court, D. Pennsylvania. April Term, 1807.[2]

MARINE INSURANCE — CAPTURE — RESTITUTION — ABANDONMENT—ACTUAL STATE OF LOSS— RIGHT TO ABANDON.

1. The vessel and cargo insured, were captured as prize, libelled and acquitted on the 7th of July; and on appeal by the captors, the sentence was affirmed on the 9th of July, and restitution was decreed; and on the 19th of July, restitution of the property captured was actually made, except of that which had been pillaged by the captors; but at what hour of the day the same was made, was submitted to the court. On the same day, a survey was made to ascertain the amount of the spoliations of the cargo, and on the 30th of July the vessel proceeded on her voyage. On the 17th of July, (in New-York) the plaintiff received notice of the capture. On the 18th, he directed his agent in Philadelphia to abandon, who did so on the 19th, informing the plaintiff thereof by mail; the mail leaving Philadelphia for New-York, at twelve o'clock on the 19th of July. The actual state of the loss, at the time of the abandonment, ought to decide the right of the assured to make the loss a total one; and it is on the reality of the loss at the time of the abandonment, its legality depends.

2. The right to abandon did not depend, in this case, on the question, whether the restitution was actually made, and the property in possession of the master of the vessel. The property was in the actual possession of the master, after the decree and warrant of restitution delivered to the master.

3. In case of capture and recapture, the property remains with the recaptors until salvage is paid.

On a case stated, the plaintiff, a citizen of the state of New-York, and residing in the city of New-York, by his agent, on the 7th of May, 1806, caused insurance to made on the cargo, freight, and brig Rolla, all owned by him; S. Clapp, master, at and from St. Jago de Cuba. The policy on the freight, and part of the cargo, valued; on the vessel, and residue of cargo, open. On the 28th of May, 1806, the vessel, while proceeding on her voyage,

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]
[2] [Affirmed in 4 Cranch (8 U. S.) 202.]

was captured and taken possession of as prize, by the French privateer schooner Napoleon, and carried into Lemon, an out-port of Samana. The captors there committed great pillage of the cargo. The Rolla remained at Lemon four or five days, and was then carried to Samana, under the charge of a prize-master, where further pillage was committed. The captors libelled the vessel and cargo, in the inferior tribunal at the city of St. Domingo; and both were acquitted on the 7th of July. This decision was appealed from, by the captors, to the superior tribunal, at the same place; when the said vessel and cargo were again acquitted, and restitution awarded. On the 9th of July, restitution of the brig was ordered to be made to the captain, with what remained of her cargo. On the 19th of July, 1806, restitution was actually made; but, if the court should think there is a collision in the evidence, as to the hour or time of actually delivering possession, and the time shall appear to them material, the court are requested to fix the hour or the time, according to their opinion of the credit and weight of the evidence. The captain had a survey made on the same day, to ascertain the loss and damage from pillage, &c.; and on the 30th of July, he proceeded on his originally intended voyage to St. Jago de Cuba; where he arrived on the 6th of August, and where the remainder of the cargo was sold, and a part of the proceeds invested in a return cargo, which was sent by the Rolla, under the command of the mate, to New-York; and the rest of the proceeds were invested in bark, and brought home in the Jane by the captain. The return cargo arrived at New-York, on the 15th of October, 1806; and on the following day, the plaintiff wrote to his agent in Philadelphia, informing him thereof, and directing him to give the information to the insurers, which was accordingly done; but the insurers refused to have anything to do with the property, or to give any directions as to the disposal of it. The plaintiff then sold the said property, for the account of the underwriters, but without their assent; except some bark, which yet remains unsold. Intelligence of the capture was received at New-York by the plaintiff, on the 17th of July, 1806. He wrote on the 18th to his agent, directing him to abandon the freight, vessel, and cargo to the insurers; which letter was received at Philadelphia, by the agent, on the morning of the 19th; and an abandonment was made to the insurers on the morning of the 19th; of which abandonment the said agent informed the plaintiff by a letter, which was forwarded to New-York by the mail of the said 19th of July, which was closed at Philadelphia at twelve o'clock of the same day. The question for the opinion of the court is, whether the plaintiff is entitled to recover for a total or a partial loss?

Ingersoll & Hopkinson, for plaintiff, contended: First; that if a loss happen by capture, of which the plaintiff is informed, and he offers to abandon, not knowing that the property has been acquitted and restored, though the fact be so, before the offer made; the abandonment is good to authorize the insured to go for a total loss. The loss happened here by capture and detention. Second; that, upon the evidence, the restitution was not complete till one o'clock in the afternoon, whereas the abandonment must have been before twelve o'clock. As to the doctrine that there are no fractions of a day, it does not apply where priority of time, as to two facts, becomes important. 1 Ld. Raym. 281; 2 Ld. Raym. 1568; 3 Burrows, 1433.

Rawle & Dallas, for defendants, denied both propositions. They cited 1 Esp. 237, to show that even after a capture, condemnation, and sale, and the vessel purchased by the captain for his owners, that the insured could not abandon; the captain being the agent of the owners in the purchase. They relied upon the expressions of the supreme court, in Rhinelander v. Pennsylvania Ins. Co. [4 Cranch (8 U. S.) 29], and of the supreme court of Pennsylvania, in Dutilh v. Gatliff [4 Dall. (4 U. S.) 446], and of Lord Mansfield, in Hamilton v. Mendez [unreported], to prove that the fact of the loss continuing to the time of the abandonment, and not the information, fixes the right of the insured to abandon. Also the case of Hallet v. Payton, 1 Caines, 38, in which the case has been directly decided. They also cited Parker, 75, 161.

WASHINGTON, Circuit Justice. The question is, whether if a right to abandon once exist, the subsequent release or safety of the property before the abandonment, but the fact unknown to the insured, will defeat that right, has never been directly decided, that we know of, but in the case of Hallet v. Payton. The reasoning of the case would seem to show, that the state of the loss at the time of the abandonment, ought to decide the right of the insured to make the loss a total one, and thus to throw the property upon the underwriters; and to demand from them the sum insured. The foundation of the right is the loss of the property, really or technically; and the transfer of what may be saved to the underwriter, is predicated upon the reality of the loss. But if the property be in safety, how can the underwriter, under the terms of his contract, be called upon for an indemnity; which was only promised in case of loss, and when no injury, or such as is merely partial, has been sustained? The information received by the insured may have been correct when it was given, but it cannot make the fact otherwise than it really is, at the time when the claim is made for a total loss. Although there is no case, but the one before mentioned, precisely in point, yet there are some which seem to throw considerable light upon the subject; and we think, enough may be gathered from what was said by Lord Mansfield, in Hamil-

ton v. Mendez, to show his opinion respecting it. In that case, the vessel, which had been captured and recaptured, was brought into Portsmouth before the offer to abandon. It is not stated, that at the time of the offer the arrival of the vessel was known to the insured, though the fact is strongly to be inferred. But it is clear, that if such was the fact it does not enter into the reasoning of the judge, who, when he lays down the principles of the law, uses expressions and illustrations, which seem strongly to exclude that circumstance from the consideration which he took of the subject. His lordship observes, that this action, which is brought for an indemnity, must be founded on the nature of the damnification, as it really is at the time of the action brought, or, at most, at the time of the offer to abandon. He considers it absurd to recover as for a total loss, when the final event proves that there was no loss at all, or only a partial one. He seems to fix the time of bringing the action, as that at which the rights of the parties are to be decided; and then lays it down, that if the cause of action does not subsist at the time, its having existed at any previous time will not avail. In no part of this opinion does he appear to consider the right of the insured to go for a total loss, to depend upon the circumstance of information he had received of the situation of the property at the time of the offer to abandon, or at that of the action brought; and the cases which he cites as analogous to, and illustrative of the doctrine he is endeavouring to establish, afford strong ground for believing that he altogether relied upon the loss continuing to the time of abandonment and bringing the action; (and so he also expresses himself in another part of the same case;) and not upon the information to the insured of the safety of the property. For certainly it cannot be contended, that in answer to a plea of the tenant, in an action of waste, that he had repaired before the action brought; or to that of the principal to an action of the surety for an indemnity, that he had paid the debt; the plaintiff could reply, that at the time of bringing the action, he had not notice of the fact set out in the plea. And I think it is impossible to produce a case upon any other subject, where the rights of the parties could be made to depend upon any thing, but the real facts at the time when these rights accrued. Why should there exist an exception in cases of insurance? That Parker has deduced the same conclusion which this court does from the expressions of Lord Mansfield, in this and other cases, is very obvious. He says, that "the loss must continue total at the time when the offer to abandon is made, or the action brought." Parker. 145. The case of Hallet v. Payton, in the highest court of judicature in the state of New-York, which appears to have been very fully argued and considered by the court, is in point. The expressions used by the supreme court of the United States, and the supreme court of this state, in the cases cited, are very strong, though like those of Lord Mansfield, in Hamilton v. Mendez, they are obiter dicta. Upon the whole, then, relying upon these authorities, and the reasons which support them; and considering that they stand unopposed by any case whatever; we feel ourselves warranted in deciding this point in favour of the defendants.

The next question is, whether at the time when the offer to abandon was made, the vessel was, in point of fact, in possession of the insured? I say, in his possession, because these are the terms which the counsel, in argument, appeared to consider as proper. But we wish it to be considered, that this court does not mean to decide that actual possession was not necessary after the decree and warrant of restitution delivered to the officer. It may, perhaps, become a question, whether if the property be in safety, by the acquittal and warrant to execute it, this circumstance may not be sufficient to defeat the right of abandonment. In the cases of capture and recapture, the possession of the property remains with the recaptors till salvage is paid; and in the case of Hamilton v. Mendez, the possession of the recaptors continued after the offer to abandon.

As to the fact; we think it very immaterial, whether the possession was delivered before or after the examination made of the state of the cargo, for it is obvious to any person who looks at the proces verbal, that it must have taken more than double the time to write this warrant. than was consumed in obtaining a knowledge of the facts which it records; consequently, if it began at nine in the morning, and the proces verbal was concluded at one in the afternoon, the facts of which it is a history, must have taken place and been completed long before meridian.

But we do not mean to decide so important a point, upon evidence which may be founded in conjecture. For we hesitate not to declare, that if for want of clear proof, the act of abandonment and restitution must be considered as contemporaneous, the decision ought to be in favour of the defendants, for two reasons—first; that the inclination of judges is not to extend the right of abandonment, for the purpose of converting a partial into a total loss, beyond the point to which former decisions have gone, because such a right is not warranted by the contract of the parties: and secondly, because the insured ought not only to prove the loss, but the continuance of it to the time of abandonment; and if the evidence is not sufficient for these purposes, he must fail. Upon the whole, we are of opinion that the plaintiff is only entitled to recover for a partial loss.

[The case was taken on a writ of error to the supreme court, where the judgment of the circuit court was affirmed, with costs. 4 Cranch (S U. S.) 202.]